# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

DELMAR REINHEIMER,

      Petitioner,

v.                                  Case No.   3:14-cv-730-J-32MCR

SECRETARY, FLORIDA
DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____

## O R D E R

      Petitioner Delmar Reinheimer, an inmate of the Florida penal system, initiated this action by filing a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 with attached exhibits.  See Doc. 1 (Petition; Pet. Ex.).  Reinheimer challenges both his 2010 state court (Clay County, Florida) conviction for lewd or lascivious battery of a victim between 12 and 16 years and his 2010 violation of probation imposed in 1995.  Respondents filed a response with attached exhibits. See Doc. 11 (Response; Resp. Ex.)  Reinheimer replied. See Doc. 13 (Reply).  With the Court's permission, see Doc. 22, Reinheimer later filed a supplement to his petition and attached exhibits.  See Doc. 23 (Supp. Petition; Supp. Pet. Ex.). Respondents filed a response to the supplement and attached exhibits.  See Doc. 32

(Supp. Response; Supp. Resp. Ex.). Reinheimer replied. <u>See</u> Doc. 33 (Supp. Reply). This case is ripe for review.[1]

## I.     <u>Procedural History</u>[2]

Following a guilty plea (Resp. Ex. L at 214-20), Reinheimer was convicted on September 16, 2010, of lewd or lascivious battery of a victim between 12 and 16 years <u>Id.</u> at 221-32. On the same day, Reinheimer also pled guilty to violation of probation imposed in 1995.[3] <u>Id.</u> at 234. On the new conviction, the court sentenced Reinheimer to thirteen years imprisonment to be followed by two years probation. <u>Id.</u> at 225. For the violation of probation, the court sentenced him to five years for each of the four counts of attempted sexual battery. <u>Id.</u> at 233-38. The court imposed concurrent sentences in both cases. <u>Id.</u> at 227, 238. Reinheimer did not take a direct appeal.

Reinheimer filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which he later amended. Resp. Ex. K at 1-11; 101-25.

---

[1] The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted. <u>See also</u> <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted) ("if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing").

[2] Because Respondents set forth a detailed procedural history in their Response, <u>see</u> Response at 1-7, the Court will provide a limited procedural history in this Order.

[3] In 1995, Reinheimer was convicted after pleading guilty to four counts of attempted sexual battery of a child under twelve years. Resp. Ex. A at 18-27. He was sentenced to seventeen years imprisonment followed by ten years of probation. He was released in 2002.

The state court held an evidentiary hearing on ground one, at which five witnesses testified. Resp. Ex. L at 239-352. On January 3, 2012, the court denied Reinheimer's motion in a twenty-three page order, accompanied by 254 pages of exhibits. Resp. Ex. K at 190-200; Resp. Ex. L at 201-400; Resp. Ex. M at 401-468. Following briefing in the appeal, the First DCA affirmed without opinion (Resp. Ex. S); denied rehearing (Resp. Ex. T); and issued the mandate on June 2, 2014 (Resp. Ex. U). Reinheimer v. State, 138 So. 3d 443 (Fla. 1st DCA 2014).

## II.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28.U.S.C. § 2254; Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, Wilson v. Sellers, 137 S. Ct. 1203 (2017). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 568 U.S.289, 301 (2013). Thus, the state court need not issue

an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Richter, 562 U.S. at 100; Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

If the claim was "adjudicated on the merits" in state court, AEDPA bars relitigation of the claim, subject only to the exceptions in § 2254(d)(1) and (d)(2). Richter, 562 U.S. at 98. As the Eleventh Circuit explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ——, ——, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ——, ——, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely

> because the federal habeas court would have reached a
> different conclusion in the first instance.'"[4]  Titlow, 571
> U.S. at ——, 134 S. Ct. at 15 (quoting Wood v. Allen, 558
> U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016); see also Daniel v. Comm'r,

Ala. Dep't of Corr., 822 F.3d 1248, 1259 (11th Cir. 2016).  Also, deferential review

under § 2254(d) is limited to the record that was before the state court that

adjudicated the claim on the merits.  See Cullen v. Pinholster, 563 U.S. 170, 181

(2011) (regarding § 2254(d)(1)); Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288,

1295 (11th Cir. 2015) (regarding § 2254(d)(2)).

Where the state court's adjudication on the merits is "'unaccompanied by an

explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no

reasonable basis for the state court to deny relief.'"  Wilson, 834 F.3d at 1235

(quoting Richter, 562 U.S. at 98).  Thus, "a habeas court must determine what

arguments or theories supported or, as here, could have supported, the state court's

decision; and then it must ask whether it is possible fairminded jurists could disagree

that those arguments or theories are inconsistent with the holding in a prior decision

of [the] Court."  Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235; Marshall,

828 F.3d at 1285.  To determine which theories could have supported the state

appellate court's decision, the federal habeas court may look to a state trial court's

---

[4]The Eleventh Circuit has described the interaction between § 2254(d)(2) and
§ 2254(e)(1) as "somewhat murky."  Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286
n.3 (11th Cir. 2016); see also Landers v. Warden, Att'y Gen. of Ala., 776 F.3d 1288,
1294, n.4 (11th Cir. 2015); Cave v. Sec'y, Dep't of Corr., 638 F.3d 739, 744-47 & n.4, 6
(11th Cir. 2011); Jones, 540 F.3d at 1288 n.5.

previous opinion as one example of a reasonable application of law or determination

of fact. Wilson, 834 F.3d at 1239; see also Butts v. GDCP Warden, 850 F.3d 1201,

1204 (11th Cir. 2017). However, in Wilson, the en banc Eleventh Circuit stated that

the federal habeas court is not limited to assessing the reasoning of the lower court.[5]

834 F.3d at 1239. As such,

> even when the opinion of a lower state court contains
> flawed reasoning, [AEDPA] requires that [the federal
> court] give the last state court to adjudicate the prisoner's
> claim on the merits "the benefit of the doubt," Renico [v.
> Lett, 449 U.S. 766, 733 (2010)] (quoting [Woodford v.
> Visciotti, 537 U.S. 19, 24 (2002)]), and presume that it
> "follow[ed] the law," [Woods v. Donald, --- U.S. ---, 135 U.S.
> 1372, 1376 (2015)] (quoting Visciotti, 537 U.S. at 24).

Id. at 1238; see also Williams, 133 S. Ct. at 1101 (Scalia, J., concurring).

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners

whose claims have been adjudicated in state court." Titlow, 134 S. Ct. at 16.

"[E]ven a strong case for relief does not mean the state court's contrary conclusion

was unreasonable." Richter, 562 U.S. at 102; see also Tharpe, 834 F.3d at 1338

("Federal courts may grant habeas relief only when a state court blundered in a

manner so 'well understood and comprehended in existing law' and 'was so lacking in

justification' that 'there is no possibility fairminded jurists could disagree.'") (quoting

Richter, 562 U.S. at 102-03). "If this standard is difficult to meet, that is because it

---

[5] Although the Supreme Court has granted Wilson's petition for certiorari, the "en banc decision in Wilson remains the law of the [Eleventh Circuit] unless and until the Supreme Court overrules it. Butts, 850 F.3d at 1205, n.2. Moreover, this Court's decision would be the same even under the pre-Wilson AEDPA framework because this Court is deferring to the state trial court's well-reasoned post-conviction opinion.

was meant to be." <u>Richter</u>, 562 U.S. at 102.

## III.    <u>Ineffective Assistance of Counsel</u>

"The Sixth Amendment guarantees a defendant the effective assistance of counsel at 'critical stages of a criminal proceeding,' including when he enters a guilty plea." <u>Lee v. United States</u>, 137 S. Ct. 1958, 1964 (2017) (quoting <u>Lafler v. Cooper</u>, 566 U.S. 156, 165 (2012); <u>Hill v. Lockhart</u>, 474 U.S. 52, 58 (1985)).    "To demonstrate that counsel was constitutionally ineffective, a defendant must show that counsel's representation 'fell below an objective standard of reasonableness' and that he was prejudiced as a result." <u>Id.</u> (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984)).   Because a petitioner must satisfy both prongs of the two-part <u>Strickland</u> test to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010) (citation omitted).

The Supreme Court has summarized the two-part <u>Strickland</u> standard:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." <u>Strickland</u>, 466 U.S. at 688.   A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689.   The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.    A reasonable probability is a

> probability sufficient to undermine confidence in the
> outcome." Id.

Richter, 562 U.S. at 104 (internal citations modified). In the context of guilty pleas, the prejudice prong requires the defendant to show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59; see also Lee, 137 S. Ct. at 1965; Premo v. Moore, 562 U.S. 115, 131–32 (2011).[6]

Finally, "the standard for judging counsel's representation is a most deferential one." Richter, 562 U.S. at 105. "Reviewing courts apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance." Daniel, 822 F.3d at 1262 (quotations omitted). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); cf. Tharpe, 834 F.3d at 1338-39 (explaining that a federal court may grant relief only if counsel's representation fell below Strickland's highly deferential standard of objectively reasonable performance and the state court's contrary decision would be untenable to any fairminded jurist).

---

[6] "[W]hen the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error[,]" the defendant "must also show that he would have been better off going to trial." Lee, 137 S. Ct. at 1965 (citing Moore, 562 U.S. at 118 (defendant alleged that his lawyer should have but did not seek to suppress an improperly obtained confession) and comparing Hill, 474 U.S. at 59 (discussing failure to investigate potentially exculpatory evidence)).

"The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105. As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## IV. <u>Findings of Fact and Conclusions of Law</u>

### A. <u>AEDPA Deference</u>

With respect to grounds one, two, four, five, and six, the Court presumes that the First DCA's per curiam affirmance of the denial of Reinheimer's Rule 3.850 motion was on the merits. <u>See</u> <u>Williams</u>, 568 U.S. at 301; <u>Richter</u>, 562 U.S. at 99. As such, the Court applies AEDPA deference in reviewing these claims.[7] <u>See</u>

---

[7] The Court considered Respondents' contention that Reinheimer's pre-plea ineffective-assistance-of-counsel claims in grounds one, two, four, and five are not cognizable in federal habeas corpus because Reinheimer fails to assert that his plea was involuntary or resulted from counsel's misadvice. <u>See</u> Response at 8-9, 11, 12, 15; <u>see also</u> <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973) (petitioner may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in <u>McMann v. Richardson</u>, 39 U.S. 759, 770 (1970)); <u>Wilson v. United States</u>, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted) ("A defendant who enters a plea of guilty waives all nonjurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained."). After considering Reinheimer's Reply (<u>see</u> Reply at 2, 4, 12, 14; <u>see also</u> Resp. Ex. K at 105, 108, 111, 112) and his pro se status, the Court will afford him the benefit of the doubt

Richter, 562 U.S. at 99.   To determine which theories could have supported the First DCA's per curiam decision without written opinion, the Court may look to the state circuit court's previous opinion as an example of a reasonable application of law or determination of fact.   Wilson, 834 F.3d at 1239; see also Butts, 850 F.3d at 1204.

## 1. **Ground One**

Reinheimer asserts that his counsel was constitutionally ineffective by refusing to interview five witnesses:   Brandi Mosley, Eric Johnson, Mike Gregg, Krista Mosley and Debra Crews.   He asserts that these witnesses would have testified that the victim fabricated her allegations and had a general inclination to lie.   Petition at 4.   Reinheimer asserted this claim on collateral review in both the state circuit and appellate courts.   See Resp. Ex. K at 102-05; P at 4-13.   The state court held an evidentiary hearing on this claim.   At the evidentiary hearing, witnesses Michael Gregg, Brandi Mosley, and Eric Johnson testified, as well as Reinheimer and his former counsel.[8]

---

and liberally construe his pleadings to consider his claims, which ultimately fail as explained below.

[8] Neither Delora Crews nor Krista Mosley testified at the evidentiary hearing. As such, Reinheimer failed to substantiate his claims relating to these witnesses, and the state circuit court did not address the claims involving them.   Although Reinheimer's testimony was insufficient to maintain his claims, he testified that Delora Crews (the victim's mother) would have verified that the victim would lie when she was in a predicament and that she was a thief, see Resp. Ex. L at 277, and that Krista Mosley (Brandi's sister-in-law) would have contradicted the victim's allegation of an orgy.   At the evidentiary hearing, counsel testified that there was no reason to interview Delora Crews because she was not listed as a witness and was never brought up as a witness by anybody.   Id. at 317.   She did not recall Reinheimer ever asking her to speak with Delora Crews, and explained that Delora Crews would have no knowledge of what happened between him and the victim.   Id.

The state court concluded that Reinheimer failed to show <u>Strickland</u> prejudice from counsel's failure to contact or depose Brandi Mosely, Mike Gregg, or Eric Johnson. <u>Id.</u> at 193-96. In sum, the state court found that Brandi would not have been a credible witness, which could have negatively affected a jury's perception if Reinheimer had gone to trial. <u>Id.</u> at 195. The state court also found that any testimony provided by Gregg or Johnson would not have substantially benefitted Reinheimer nor impacted the trial. <u>Id.</u> at 195-96. As such, the state court concluded that there was no reasonable probability that the outcome of the proceeding would have been different had these witnesses been deposed or called as a witness. <u>Id.</u>

With respect to counsel's performance, counsel testified that the prosecution could not locate Brandi Mosley at the time. She did not seek to contact Brandi, who was a minor, because it could have exposed Reinheimer to additional charges. The state court concluded that "counsel made a reasonable and informed strategic decision not to contact Brandi [Mosley] and as such, cannot be deemed to have provided ineffective assistance."[9] <u>Id.</u> at 193.

Applying deference under AEDPA and <u>Strickland</u>, the Court finds that the state court's decision was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it did not result from an unreasonable determination of the facts as

---

[9] The state court made no finding but assumed <u>arguendo</u> that counsel should have investigated Mike Gregg and Eric Johnson. <u>Id.</u> at 195-96. <u>See</u> <u>Ward v. Hall</u>, 592 F.3d 1144, 1163 (11th Cir. 2010) ("a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa").

presented to the state court. The claim in ground one is denied.

## 2. **Ground Two**

Reinheimer contends that his counsel refused to pursue a defense based on impeaching the victim's credibility with an expert opinion regarding his medication-induced impotence. Petition at 4-5. He further contends that the state court denied this claim by using an uncharged offense as reason to summarily deny his claim of ineffective assistance of counsel. Id. at 5. Reinheimer exhausted this claim in state court by raising it in his amended motion for postconviction relief (Resp. Ex. K at 106-08) and on appeal to the First DCA. Resp. Ex. P at 13-19.

The state court denied his claim, concluding that counsel's performance was not deficient and that no prejudice resulted. Resp. Ex. K at 196, 198. After reviewing the facts as asserted in the victim's deposition, the state court concluded that "expert testimony regarding Defendant's alleged impotency could have been found to corroborate the victim's testimony." Id. at 197. Furthermore, the state court found that the victim's deposition testimony revealed that at the very least, Reinheimer committed a lewd and lascivious battery by digital penetration. Thus, Reinheimer failed to demonstrate a reasonable probability that, but for counsel's failure to contact an expert, the result of the proceeding would have been different. Id. at 198.

Applying AEDPA deference, the state court's decision was neither contrary to nor an unreasonable application of Strickland, and it did not result from an unreasonable determination of the facts as presented to the state court. The claim

in ground two is denied.

### 3. **Ground Four**

Reinheimer contends that counsel never informed him that the victim could be impeached for making several inconsistent statements. Petition at 5. He complains that counsel never tried to use the victim's inconsistent statements to attempt to get the charges dismissed or a more favorable plea. Id. Reinheimer exhausted this claim by raising it as ground four in his amended motion for postconviction relief in state court, Resp. Ex. K at 111-13, and as issue three on appeal to the First DCA. Resp. Ex. P at 19-26.

Without reaching the issue of deficient performance, the state circuit court found that Reinheimer suffered no prejudice under Strickland because there was no "reasonable probability that Defendant would have insisted on going to trial." Resp. Ex. L at 202. The state circuit court further explained:

> [B]ased on the plea colloquy, Defendant's signed Plea of Guilty and Negotiated Sentence, the substantial amount of evidence against Defendant, and the difference between the sentence imposed under the plea and the maximum possible sentence, Defendant cannot show there is a reasonable probability that he would have proceeded to trial but for counsel's alleged omissions.

Id. at 210-11. Applying deference under AEDPA, the state court's decision was neither contrary to nor an unreasonable application of Strickland, and it did not result from an unreasonable determination of the facts as presented to the state court. The claim in ground four is denied.

## 4. **Ground Five**

Reinheimer asserts that counsel refused to pursue an investigation of Matt Brown for filing a fraudulent affidavit for arrest warrant in order to violate Reinheimer's probation. He contends that absent the fraudulent affidavit, there was a very high probability that he never would have been violated on his probation nor charged with lewd and lascivious battery. He also contends that counsel's error denied him dismissal of the charges, or at the least, suppression of any damaging statements he made. Petition at 6. Reinheimer exhausted this claim by raising it as ground three in his amended motion for postconviction relief in state court, see Resp. Ex. K at 108-11, and as issue five on appeal to the First DCA. Resp. Ex. P at 31-37. The state circuit court concluded:

> The Court does not need to reach the issue of whether counsel performed deficiently by failing to challenge the affidavit for arrest on the charge of Sheltering and Providing Aid to a Minor Runaway, as the affidavit did not result in prejudice with regard to Defendant's charge of Lewd and Lascivious Battery. The affidavit for arrest warrant as to the charges of Lewd and Lascivious Battery substantially relied on the victim's statements that Defendant performed sexual activities with the minor victim. (Exhibit "G.") Therefore, the Court finds the issue of Officer Brown's alleged perjured affidavit filed in support of the charge of Sheltering and Providing Aid to a Minor Runaway, does not undermine that Court's confidence in Defendant's conviction for Lewd and Lascivious Battery. Accordingly, Defendant's third ground for relief is denied.

Resp. Ex. K at 198-99.

Applying AEDPA deference, the state court's decision was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it did not result from an

unreasonable determination of the facts as presented to the state court.   The claim in ground five is denied.

### 5.  <u>Ground Six</u>

Reinheimer contends that counsel was ineffective for failing to ensure that he was credited for all previous actual time served on his violation of probation.   He submits that he had over three years actually served in prison and jail and should have received this credit to run coterminous with his new sentence.   He contends that the state court denied this ground based on an altered plea form.   Petition at 6.

Reinheimer exhausted this claim by raising it as ground five in his amended motion for postconviction relief in state court, <u>see</u> Resp. Ex. K at 113-14, and as issue six on appeal to the First DCA.   Resp. Ex. P at 37-42.   The state circuit court addressed the claim as follows:

> As a practical matter, based on the State's unwillingness to negotiate a plea with Defendant for anything less than thirteen years imprisonment (Exhibit "D," page 62, 67.), the Court finds it unlikely Defendant would be offered seven years credit to the new sentence imposed in the instant case.   Furthermore, the Court specifically finds [counsel's] testimony both more credible and more persuasive than the Defendant's testimony and allegations.   <u>Laramore v. State</u>, 699 So. 2d 846 (Fla. 4th DCA 1997).   At the evidentiary hearing, [counsel] explained that Defendant agreed to the following sentence:
>
> > A. He entered a plea for 13 years Department of Corrections, then two years probation on a lewd and lascivious case, the 2010.   And the agreement was that he would serve five years concurrent for the violation of probation, waiving any past credit except for what he received for his current incarceration.

> (Exhibit "D," page 61. The Court accepts the testimony of [counsel] and finds that she was not ineffective in advising Defendant as to the terms of his plea. Accordingly, Defendant's fifth ground for relief is denied.

Resp. Ex. K at 199-200.

Applying AEDPA deference, the state court's decision was neither contrary to nor an unreasonable application of <u>Strickland</u>, and it did not result from an unreasonable determination of the facts as presented to the state court. The claim in ground six is denied.

## B. <u>Procedural Default</u>

### 1. <u>Ground Three</u>

Reinheimer asserts that counsel misinformed him prior to entering his guilty plea that he did not qualify for civil commitment under the Jimmy Ryce Act. He contends that he would have gone to trial had he known that he would be subject to the Jimmy Ryce Act. He also asserts that the sentencing court allowed him to believe and discouraged him from questioning his attorney's misadvice. Petition at 5.

Reinheimer did not raise any issue involving the Jimmy Ryce Act in the amended motion for postconviction relief he filed in state court on January 3, 2012. Resp. Ex. K at 101-125. However, after the conclusion of testimony at the evidentiary hearing in state court, the following exchange between postconviction counsel (Ms. Papa) and the court occurred:

> MS. PAPA: Your Honor, another issue that was brought up, and I know that we are just addressing the two issues from Judge Lester, is before my client got here

and after – before he got to you, he had filed an amended petition.[10]

And in that petition was that **he had failed to be advised of the Jimmy Ryce Act.** So neither Judge Lester nor yourself has made a ruling about whether we can investigate that.

Your Honor, there is a plea form in the file that does have the Jimmy Ryce information and that does have my client's initials on it; however, it – and this is why at the beginning of the case I had asked for the transcripts of the plea. And in those transcripts of the plea, although it isn't a plea form, it's actually – there's no warning of that given on the record, and that was another reason my client had added, but it hasn't been litigated and I just wanted to state that for the record.

THE COURT: I don't think it ought to be sufficient to set aside the plea in that your client has not yet been civilly detained by the Jimmy Ryce Act, and we don't know whether he ever would be, and the record does reflect that he initialed that paragraph on the plea form.

MS. PAPA: Yes, sir. Your Honor, may I have a moment, please?

THE COURT: Yes.

MS. PAPA: Thank you.

**(Counsel conferred briefly with the defendant.)**

MS. PAPA: Your Honor, we would not have any other witnesses to call.

Resp. Ex. L at 341-42 (emphases added). The parties then continued and presented

---

10 The record does not include any written amended petition in which Reinheimer raised a claim that counsel was ineffective for either failing to advise or misadvising him of the potential implications of the Jimmy Ryce Act.

closing arguments, but no one mentioned the Jimmy Ryce Act again. Notably, despite conferring with counsel and having the opportunity to correct her description of his claim if he so desired, Reinheimer did not correct his postconviction counsel's characterization of his claim as a "failure-to-advise" claim.

In the state court's order denying postconviction relief, the court summarized by stating:

> [A]t the evidentiary hearing, Defendant informed the Court that he had filed another amended petition in which he alleged error in that **counsel and this Court failed to advise him** as to the Jimmy Ryce Act.

Id. at 211 (emphasis added). Before denying the claim, the court initially noted that Reinheimer wrote his initials next to the standard "Jimmy Ryce Warning" paragraph in the written plea of guilty and negotiated sentence form. The court then explained that civil commitment under the Jimmy Ryce Act constitutes a collateral consequence of a plea and found that the "**failure to advise** a defendant about a collateral consequence cannot be the basis for post-conviction relief to set aside the plea bargain." Id. at 211-12 (emphasis added).

Reinheimer appealed the denial of postconviction relief to the First DCA, where he asserted in his initial pro se brief that "[t]he court committed reversible error when denying defendant the right to timely submit a new amended ground pertaining to counsel's **misadvice** regarding the civil commitment pursuant to the Jimmy Ryce Act[ ] and the trial court's failure to inform defendant to this possibility." See Resp. Ex. P at 26. He argued further that "[d]efense counsel's **misadvise** (sic) about Defendant not qualifying for the Ryce Act caused Defendant to enter a plea of

guilty where had he known the truth Defendant would have never entered into a plea of guilty but would have proceeded to trial. Id. at 29. He did not assert in his appellate brief that his postconviction counsel misrepresented his claim in the trial court as a failure-to-advise claim; nor did he assert that the trial court misconstrued his claim as a failure-to-advise claim rather than an affirmative misadvice claim.

In response, the state asserted in it's appellate brief that it was "unable to locate an amended petition raising this issue in the record on appeal." Resp. Ex. Q at 43. As such, the state contended that the issue was not properly before the trial court and therefore not preserved for appellate review. Id. Assuming arguendo that the issue was properly preserved, the state contended that the claim lacked merit because the plea form bore Reinheimer's initials in two separate provisions warning of the potential ramifications of the Jimmy Ryce Act. See id. at 44-46.

Reinheimer replied that the issue was preserved because the court chose to accept the new claim orally in open court. Resp. Ex. R at 7. Regarding the merits, Reinheimer contended that the record (plea form) did not refute his claim that counsel misadvised him regarding application of the Jimmy Ryce Act. Id. The First DCA affirmed per curiam without written opinion. Resp. Ex. S.

There is a factual distinction between a claim that counsel failed to inform a defendant of potential collateral consequences and a claim that counsel affirmatively misadvised a defendant of potential collateral consequences. See Bauder v. Dep't Of Corr. of Fla., 333 F. App'x 422, 424 (11th Cir. 2009) (reversing and remanding because the district court analyzed petitioner's claim as if he only claimed that his counsel

failed to advise him of potential civil commitment and failed to analyze the effect of defense counsel's alleged affirmative misadvice regarding civil commitment).[11]   The two claims are not the same.   Even assuming Reinheimer fairly presented a claim to the state circuit court, he presented it as a failure-to-inform claim, <u>see</u> Resp. Ex. L at 341, and the state circuit court ruled on it as such.   <u>See id.</u> at 211-12.   However, Reinheimer presented a different claim -- a claim of affirmative misadvice – on appeal to the First DCA.   <u>See</u> Resp. Ex. P at 26-31; Resp. Ex. R at 7.[12]

In his Petition, Reinheimer presents a claim of affirmative misadvice, but he failed

---

[11] <u>See also</u> <u>Holmes v. United States</u>, 876 F.2d 1545, 1553 (11th Cir.1989) (reversing and remanding for an evidentiary hearing to determine whether counsel's affirmative misadvice regarding parole eligibility, a collateral consequence, rendered the appellant's guilty plea unknowing and involuntary); <u>Slicker v. Wainwright</u>, 809 F.2d 768, 770 (11th Cir.1987) (reversing and remanding for an evidentiary hearing because the appellant alleged that, had counsel not affirmatively misinformed him about parole eligibility, he would have insisted on proceeding to trial); <u>Downs-Morgan v. United States</u>, 765 F.2d 1534, 1540-41 (11th Cir.1985) (distinguishing an attorney's failure to advise his client regarding a collateral consequence of his plea from an affirmative misrepresentation, concluding that whether counsel was ineffective based on a misrepresentation should be determined based on the totality of the circumstances).

[12] The Eleventh Circuit has recognized that counsel's affirmative misadvice regarding application of the Jimmy Ryce Act could constitute deficient performance under <u>Strickland</u>.   <u>Bauder v. Dep't of Corr.</u>, 619 F.3d 1272, 1274 (11th Cir. 2010). Prior to doing so, however, the Eleventh Circuit "distinguished between trial counsel's failure to inform a defendant of potential collateral consequences and counsel's affirmative misadvice to a defendant regarding potential collateral consequences."   <u>Bauder</u>, 333 F. App'x at 424.   Since the Eleventh Circuit drew that distinction, the Supreme Court stated that there was "no relevant difference between an act of commission and an act of omission in th[e] context" of advice regarding the risk of deportation.   <u>Padilla v. Kentucky</u>, 559 U.S. 356, 370 (2010) (citing <u>Strickland</u>, 466 U.S. at 690).   However, the Supreme Court in <u>Padilla</u> limited its opinion to circumstances involving "the unique nature of deportation."   <u>Id.</u> at 365; <u>see also</u> <u>Kim v. Dir., Virginia Dep't of Corr.</u>, 103 F. Supp. 3d 749, 755-56 (E.D. Va. 2015).

to exhaust this claim by fairly presenting it to the state circuit court. As such, the claim in ground three is unexhausted. See 28 U.S.C. § 2254(b)(1); see also Baldwin v. Reese, 541 U.S. 27, 29 (2004) (the prisoner must give the state courts the opportunity to correct alleged constitutional violations by presenting his claims in each appropriate state court). Because any future attempts at exhaustion would be futile, Reinheimer's claims are also procedurally barred. See Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 908 n.9 (11th Cir. 2009); see also O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). Federal habeas review is precluded.[13] See Pope v. Sec'y for Dep't of Corr., 680 F.3d 1271, 1284 (11th Cir. 2012). As such, the claim in ground three is denied.[14]

## 2. **Grounds Seven and Eight**

As ground seven, Reinheimer asserts that counsel was ineffective by neither filing any pretrial motion to suppress any harmful statements nor informing him that a suppression motion was available to him. He asserts that he informed his counsel that he was never given his Miranda rights prior to being interrogated by law enforcement prior to his polygraph. He contends that the lower court accepted an altered Miranda warning form that was used for the purpose of Reinheimer consenting to photographs of his penis, and that the date on the form predated his

---

[13] Reinheimer makes no effort to show either (1) cause for and actual prejudice from the default or (2) a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010).

[14] Even if not procedurally defaulted, given that Reinheimer's signed plea form included Jimmy Ryce warnings, an ineffective-assistance-of-counsel claim on this ground would not likely prevail.

arrest by one year.  Petition at 7.  Reinheimer raised this issue as ground seven in his amended motion for postconviction relief in state court.[15]  The state trial court denied his claim, finding that Reinheimer could not satisfy the prejudice requirement under <u>Strickland</u> because he could not show a reasonable probability that he would have proceeded to trial but for counsel's alleged omissions.  Resp. Ex. L at 202; 210-11.

As ground eight, Reinheimer contends that the prosecution was personal and vindictive.  He asserts that the prosecutor chose to pursue a conviction despite knowing that Matt Brown had filed a fraudulent affidavit to support the arrest warrant and that the victim was neither credible nor truthful.  He asserts that counsel should have moved to have the charges dismissed.  Petition at 8. Reinheimer raised this issue as ground six in his amended motion for postconviction relief in state court.  The state trial court denied his claim, finding that Reinheimer's allegation failed to demonstrate any specific prejudice as required under Florida state law to disqualify a prosecutor.  Accordingly, the state court found that Reinheimer failed to establish deficient performance or that the outcome of the proceedings would have been different absent counsel's alleged omission.  Resp. Ex. K at 200.

Although Reinheimer raised these claims in the state circuit court, he failed to include them in the pro se brief he filed in the First DCA.  As such, the claims in grounds seven and eight are unexhausted.  <u>See</u> 28 U.S.C. § 2254(b)(1); <u>Boerckel</u>, 526

---

[15] "In his seventh ground for relief, Defendant alleges that he was not provided his Miranda warnings prior to his interview with a private polygraph administrator." Resp. Ex. L at 201-02, n. 1.

U.S. 838 at 845 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); Pope, 680 F.3d at 1284 (failure to present every issue to the state's highest court, either on direct appeal or collateral review, constitutes a failure to exhaust state remedies); Doorbal v. Dep't of Corr., 572 F.3d 1222, 1229 (11th Cir. 2009) (failure to appeal the denial of an ineffective-assistance-of-counsel claim constitutes a failure to exhaust state court remedies); see also Baldwin v. Reese, 541 U.S. 27, 29 (2004) (the prisoner must give the state courts the opportunity to correct alleged constitutional violations by presenting his claims in each appropriate state court). Because any future attempts at exhaustion would be futile, Reinheimer's claims are also procedurally barred. See Owen, 568 F.3d at 908 n.9. Thus, federal habeas review is precluded, unless Reinheimer can show either (1) cause for and actual prejudice from the default; [16] or (2) a fundamental miscarriage of justice. [17] See Davila v. Davis, 137 S. Ct. 2058, 2064-65 (2017);

---

[16] "To establish 'cause'. . . the prisoner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" Davila, 137 S. Ct. at 2065 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). "[T]o show prejudice, a petitioner must demonstrate that 'the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness.'" Ward, 592 F.3d at 1157 (quoting McCoy v. Newsome, 953 F.2d 1252, 1261 (11th Cir. 1992) (per curiam)).

[17] This exception is "exceedingly narrow in scope as it concerns a petitioner's 'actual' innocence rather than his 'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995), cert. denied, 535 U.S. 926 (2002)). "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Id. In addition, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such

<u>Coleman</u>, 501 U.S. at 750; <u>Ward</u>, 592 F.3d at 1157.

Reinheimer contends that he relied on a certified law clerk's advice that he could not raise the claims in grounds seven and eight on appeal to the First DCA due to page limitations. [18] Petition at 7-8. Initially, Respondents note that Reinheimer's initial brief on appeal was forty-two pages of text, less than the limit of fifty. [19] Response at 17. Thus, Reinheimer had eight unused pages of text available to him that he could have used to address the claims in grounds seven and eight. Moreover, he never asked the First DCA for permission to exceed any applicable page limit.

Nevertheless, even assuming that Reinheimer relied on erroneous advice from the prison law clerk, it would not serve as cause to excuse his failure to raise these claims on collateral appeal. Reinheimer proceeded pro se in his state collateral appeal to the First DCA; he had no constitutional right to counsel in state postconviction proceedings. <u>See</u> <u>Davila</u>, 137 S. Ct. at 2062, 2065. As such, he had personal responsibility for pursuing his issues on collateral appeal. <u>Cf.</u> <u>Marsh v. Soares</u>, 223 F.3d 1217, 1220 (10th Cir. 2000) ("The fact that an inmate law clerk was assisting in drafting the state petition does not relieve [petitioner] from the personal responsibility of complying with the law.") He cannot rely on the misadvice of a

---

evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

[18] Reinheimer makes no attempt to assert a fundamental miscarriage of justice.

[19] In his Reply, Reinheimer does not address grounds seven and eight.

prison law clerk to excuse his procedural default.[20]  Due to Reinheimer's failure to exhaust these claims and the resulting procedural default, the Court denies the claims raised in grounds seven and eight.

### 3.  **Supplemental Petition**

Essentially, Reinheimer asserts that he was convicted of a nonexistent offense because the statute was never properly enacted.  See Supp. Petition at 1.  He contends that he is actually innocent of any charge based on the void statute.  Id. at 4.  He asserts that the court had no subject matter jurisdiction to punish him.  Id. As such, he contends that he can raise this issue at any time, citing Florida law.  Id. at 4-5; 8.

Respondents moved to dismiss the supplemental petition.  See Supp. Response.  The Court agrees with Respondents that Reinheimer's claim is untimely under § 2244(d)(1)(A) and that Reinheimer has neither asserted nor established that he is entitled to equitable tolling.  Id. at 2-4.  Alternatively, the Court agrees with Respondents that Reinheimer's claim is procedurally defaulted because he failed to exhaust his claim in state court.  See id. at 4-5.  He also fails to assert or demonstrate cause and prejudice for his procedural default or a fundamental

---

[20] Although Reinheimer does not assert that Martinez v. Ryan, 566 U.S. 1 (2012) should apply to excuse his procedural default, the narrow exception in Martinez does not apply to Reinheimer's failure to raise his claims on collateral appeal.  See id. at 14; Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164, (11th Cir. 2017) (the Martinez exception applies only where the prisoner failed to properly raise ineffective-assistance-of-trial-counsel claims during the initial collateral proceeding).  Alternatively, Reinheimer cannot demonstrate that his underlying claims are substantial.  Martinez, 566 U.S. at 14.

miscarriage of justice.   As such, the claim in the supplemental petition is denied.

Accordingly it is hereby

**ORDERED:**

1. Reinheimer's Petition Under § 2254 for Writ of Habeas Corpus (Doc. 1) is

   **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The **Clerk of Court** shall enter judgment denying the Petition and

   dismissing this case with prejudice.

3. If Petitioner appeals the denial of the Petition, the Court denies a certificate

   of appealability.[21] Because this Court has determined that a certificate of

   appealability is not warranted, the **Clerk of the Court** shall terminate

   from the pending motions report any motion to proceed on appeal as a

   pauper that may be filed in this case.   Such termination shall serve as a

   denial of the motion.

---

[21] This Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, a certificate of appealability is not warranted.

4. The **Clerk of the Court** shall close this case.

**DONE AND ORDERED** in Jacksonville, Florida this 13th day of September 2017.

TIMOTHY J. CORRIGAN
United States District Judge

lc22
Copies to:     Counsel of record
               Delmar Reinheimer #144366